IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN DOE,

    Plaintiff,

vs.                                                                           Civil Action No. _____

WILLIAM B. LEE, Governor
of the State of Tennessee,

and

DAVID B. RAUSCH, Director
of the Tennessee Bureau of
Investigation, in their official
capacities,

    Defendants.

## COMPLAINT

COMES NOW, the PLAINTIFF, JOHN DOE, by and through the undersigned counsel, and as and for his Complaint, states as follows, to wit:

## INTRODUCTION

1. One of the most important safeguards against tyranny is the prohibition against *ex-post facto* laws as found in Article I, Section 10 of the Constitution. As James Madison observes in Federalist #44, "… ex-post-facto laws … are contrary to the first principles of the social compact, and to every principle of sound legislation." The future President further explains:

> The sober people of America are weary of the fluctuating
> policy which has directed the public councils. They have seen

> with regret and indignation that sudden changes and legislative interferences, in cases affecting personal rights, become jobs in the hands of enterprising and influential speculators, and snares to the more industrious and less informed part of the community.

Alexander Hamilton concurs in Federalist #84:

> … [T]he prohibition of ex-post-facto laws [and other safeguards] … are perhaps greater securities to liberty and republicanism than any it contains. The creation of crimes after the commission of the fact, or, in other words, the subjecting of men to punishment for things which, when they were done, were breaches of no law, and the practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny.

2. Describing *ex post facto* laws as "manifestly unjust and oppressive," Justice Samuel Chase offered several definitions for what suffices for an *ex post facto* law, to-wit:

> I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Calder v. Bull, 3 U.S. (3 Dall.) 386, 390-91 (1798). Two hundred and twenty-three years later, the Supreme Court continues to look favorably upon this analysis. Cf. Peugh v. United States, 569 U.S. 530, 538, 133 S. Ct. 2072, 2081 (2013) (quoting Calder).

3. The case at bar centers around the third prong of the Calder analysis ("Every law that changes the punishment, and inflicts a greater punishment, than the law

annexed to the crime, when committed.") The Plaintiff pleaded guilty to a sex crime in 2000 when he was only seventeen years old. He was required to register as a sex offender under the regime that was in force at the time. However, that regime has changed multiple times since his conviction. Relying upon the holding of this Court in <u>Doe v. Lee</u>, No. 3:16-cv-02862 (M.D. Tenn. Feb. 8, 2021)[1], Plaintiff claims that the subsequent changes to the sex offender registration system are punitive in nature and, therefore, unconstitutional as applied to him.

4. Beyond this, the Plaintiff alleges that the mandatory lifetime registration requirement that was in force when he was convicted should also be deemed unconstitutional as to him since he was a minor when he committed the crime in question. Plaintiff raises by analogy the Supreme Court's holdings in <u>Jones v. Mississippi</u>, 141 S. Ct. 1307, 1311 (2021) and <u>Miller v. Alabama</u>, 567 U. S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) for the proposition that mandatory lifetime sentences (such as lifetime sex offender registration) are unconstitutional when imposed upon persons like the Plaintiff who committed their crimes while they were still juveniles.

## **PARTIES, JURSIDICTION, AND VENUE**

5. JOHN DOE is a resident of Bedford County, Tennessee. In 2000, then-seventeen-year-old Doe was charged in Davidson County Juvenile Court with four counts of rape. In late 2001, Doe's case was transferred to Circuit Court where he was charged by information with one count of rape and three counts of attempted rape. He

---

[1] Significant portions of this complaint were taken directly from the complaint that forms the basis for the <u>Doe v. Lee</u> matter.

pleaded guilty to all four counts, accepting full responsibility for his wrongful actions. Doe was sentenced to a year in jail followed by lifetime community supervision. Pursuant to the *Sexual Offender Registration and Monitoring Act* ("SORMA"), Doe registered as a sex offender. SORMA has since been replaced by the *Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004* ("the Act"). Doe seeks to have the Act and any amendments to SORMA made after he was convicted declared unconstitutional as applied to him.

6. Defendant WILLIAM B. LEE is the Governor of the State of Tennessee. He is sued in his official capacity. Pursuant to Article III, § 1 of the Tennessee Constitution, the supreme executive power of the state is vested in the Governor. The Tennessee Constitution further provides that the Governor shall take care that applicable federal and state laws are faithfully executed. Tenn. Const., Art. III, § 10. Governor Lee is ultimately responsible for the enforcement of the laws of this state and for supervision of all state departments, including the Tennessee Bureau of Investigation ("TBI"). Governor Lee is an appropriate defendant in a case challenging the constitutionality of the Act.

7. Defendant DAVID B. RAUSCH is the Director of the TBI. He is sued in his official capacity. The Act requires the TBI to maintain Tennessee's sex offender registry. See Tenn. Code Ann. §§ 40-39-204(a) & (d), 40-39-206(a) (2016). The TBI's responsibilities include enforcing the Act, maintaining the state's database of sex offenders, maintaining an Internet-accessible public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees, and coordinating with national law

enforcement and the national sex offender registry. See Tenn. Code Ann. §§ 40-39-203(i), 40-39-204(a) & (d), 40-39205(a) & (f), 40-39-206 (2016). The director of the TBI is an appropriate defendant in a case challenging the constitutionality of the Act.

8. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Doe seeks redress for the deprivation of rights secured by the U.S. Constitution. These claims are brought under 42 U.S.C. § 1983. Similarly, Doe's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

9. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) since at least one of the Defendants resides or works in this judicial district.

**FACTUAL ALLEGATIONS**

*THE HISTORY OF THE ACT*

10. Tennessee's sex offender registry law began as a private law enforcement database in 1995. However, it has changed radically since then. Its present form, *i.e.*, the Act, subjects registrants to obligations, restraints, disabilities, and punishment of a different character and a greater degree than those imposed by SORMA or even by the Act in its original form. This Court articulates the Act's history in Doe v. Lee, *to-wit*:

> On May 10, 1994, Governor Ned Ray McWherter signed into law Tennessee's Sexual Offender Registration and Monitoring Act ("SORMA"). 1994 Tenn. Pub. Laws, ch. 976. [*6] SORMA required TBI to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." Id. § 7(a). "Sexual offender" was defined as an individual who had been convicted of one of a number of enumerated offenses under Tennessee criminal law—or who was convicted of committing the equivalent behavior in

another state—unless the offender had been wholly released without supervision from incarceration, probation, or parole prior to January 1, 1995. Id. § 3(2)—(3). Accordingly, SORMA applied to some, but not all, qualifying offenders whose criminal acts occurred before the law's enactment.

SORMA required any individual convicted of a sexual offense to register within ten days of release without supervision from probation, parole, or incarceration. Id. § 4. TBI was then instructed to send the registrant a verification and monitoring form every ninety days, which the registrant was required to complete and return within ten days of receipt. Id. § 5. In addition to these periodic updates, a registrant had an ongoing duty to complete a new form within ten days of any change of residence or entry into a municipality or county for temporary residence or domicile. [*7] Id. § 4. SORMA imposed no in-person registration or reporting duty, relying instead on the prescribed paper forms. Id. The information in the SORMA registry was expressly designated as confidential, with the exception that TBI or a local law enforcement agency could "release relevant information deemed necessary to protect the public concerning a specific sexual offender." Id. § 7(c). An offender registered under SORMA was permitted to petition a court for relief from its requirements ten years after his or her release from supervision. Id. § 8(a). The court, upon consideration of several factors including the age of the offender's victims and the behavior of the offender since his offense, was required to grant the petition if it found the registrant had complied with the Act, was rehabilitated, and did not pose a threat to public safety. Id. § 8(c). If the petition was granted, the TBI was required to expunge the registrant's data from its registry. Id.

In the ensuing decade, the General Assembly repeatedly amended SORMA either to expand its scope, increase the reporting requirements placed on registered offenders, or reduce the level of confidentiality of registry information. See 1996 Tenn. Pub. Acts, ch. 834, § 1 [*8] (extending SORMA to individuals charged with sex offenses but placed on pre-trial and judicial diversion); 1997 Tenn. Pub. Acts, ch. 455, § 3 (extending SORMA to individuals who had completed diversion and had their records expunged); 1997 Tenn. Pub. Acts, ch. 461, § 2 (making public registry information for

offenders whose offenses were committed after July 1, 1997); 1997 Tenn. Pub. Acts, ch. 466, § 1 (extending SORMA to individuals convicted of certain non-sexual offenses against minors and permitting TBI to require that registrants provide current photographs); 2000 Tenn. Pub. Acts, ch. 882, § 1 (imposing mandatory 180-day sentence for falsification of registration forms); 2000 Tenn. Pub. Acts, ch. 997, § 1-2 (imposing mandatory lifetime registration for offenders with multiple convictions for sexual offenses or a single conviction of a "violent sexual offense," defined as actual or attempted aggravated rape, rape, aggravated sexual battery, or rape of a child); 2000 Tenn. Pub. Acts, ch. 997, § 3 (requiring registered offender to report within ten days of coming to a municipality or county in which they work or are students); 2002 Tenn. Pub. Acts, ch. 469, §§ 3, 5, and 11 (requiring registered offenders [*9] to report within ten days of being employed or becoming a student or volunteer at an institution of higher learning in the county or municipality in which they reside, and providing that the name and address of that institution will be made public for registered offenders who committed offenses after October 27, 2002).

SORMA did not expressly restrict where a registrant could live, work, or travel until 2003. (Doc. No. 1 at ¶ 55; Case No. 3:17-cv-00264, Doc. No. 1 at ¶ 39.) In 2003, however, the General Assembly enacted legislation prohibiting a SORMA registered offender from: establishing a residence or accepting employment with 1,000 feet of a school, a child care facility, or the home of their victim or the victim's immediate family member; coming within 100 feet of the victim; establishing a residence or other living accommodation with a minor who was not the registered offender's own child; and establishing a residence with the registered offender's own minor child, if any child of the offender had been the offender's victim or if the offender's parental rights had been or were being terminated. 20003 Tenn. Pub. Acts, ch. 95, § 1. A violation of any of the 2003 prohibitions was a Class [*10] A misdemeanor. Id.

In 2004, the Tennessee General Assembly repealed SORMA and replaced it with the Act, which continues, in amended form, today. 2004 Tenn. Pub. Laws, ch. 921. The Act continued the State's registration system, albeit with some changes.

Carrying on a distinction first introduced to SORMA in 2000, the Act classifies registrants as either "sexual offenders" or "violent sexual offenders," depending on the offense of which that registrant was convicted. Individuals classified as sexual offenders include those convicted of sexual battery, statutory rape, aggravated prostitution, sexual exploitation of a minor, incest, indecent exposure (upon the third such conviction), and false imprisonment of a minor who was not the offender's own child—an offense that, in and of itself, contains no expressly sexual element, see Tenn. Code Ann. § 39-13-302 ("A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty."). Id. § 1(16). Also included as sexual offenders are any offenders convicted of attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact with regard to [*11] any of the qualifying offenses. Id. Individuals classified as violent sexual offenders include those convicted of rape, aggravated rape, rape of a child, aggravated sexual battery, aggravated or especially aggravated sexual exploitation of a minor, aggravated or especially aggravated kidnapping of a minor other than the offender's own child, sexual battery by an authority figure, solicitation of a minor, and attempt, solicitation, or conspiracy with regard to any of the aforementioned qualifying offenses. Id. § 1(24).

Under the Act, sexual offenders must verify their registration information on an annual basis, and violent sexual offenders must do so quarterly. Tenn. Code Ann. § 40-39-204(b)—(c). In contrast to SORMA's system of TBI-propagated forms, the Act requires offenders to register and report in person to a designated law enforcement agency. Tenn. Code Ann. §§ 40-39-203(a), 40-39-204(b). Reports based on certain triggering events, such as a change of residence or employment, must be made within forty-eight hours. Tenn. Code Ann. § 40-39-203(a)(3)—(6). The Act increased the amount of information required to be reported, Tenn. Code Ann. § 40-39-203(h), and offenders are required to pay administrative fees related to their ongoing inclusion in the registry, Tenn. Code Ann. § 40-39-204(b)(1) and (c). Some offenders remain eligible for removal from the registry after [*12] ten years, but the authority to make an initial removal decision has been vested in the TBI, with a right to appeal to a chancery court. Tenn.

Code Ann. § 40-39-207(b), (g). A violation of the Act's requirements is now a felony, as opposed to a misdemeanor under SORMA. Tenn. Code Ann. § 40-39-208(b).

Like SORMA, the Act has been repeatedly revised to increase its restrictions and requirements and to make more information about registered offenders publicly available. See 2005 Tenn. Pub. Acts, ch. 316, § 1 (adding to events and information that must be reported and increasing administrative fees); 2006 Tenn. Pub. Acts, ch. 890, § 20 (forbidding registrants whose victims were minors from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public); 2007 Tenn. Pub. Acts, ch. 126, § 1 (adding to events triggering a 48-hour reporting obligation); 2007 Tenn. Pub. Acts, ch. 531, § 1 (making public all registrants' information, regardless of date of offense); 2008 Tenn. Pub. Acts, ch. 979, § 1 (adding information required to be reported and making information, including registrant e-mail addresses, available to qualifying [*13] businesses); 2008 Tenn. Pub. Acts, ch. 1164, § 13 (restricting employment permitted to registrants whose victims were minors and forbidding said registrants from wearing certain costumes—such as clowns or fictional characters—in the presence of minors); 2009 Tenn. Pub. Acts, ch. 597, § 1 (forbidding all registrants, regardless of age of victim, from the premises of school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if they have reason to believe children are present, or from standing or sitting idly within 1,000 feet of such locations unless the registrant is responsible for a child or a "specific or legitimate reason" for their presence); 2010 Tenn. Pub. Acts, ch. 1138, §§ 7, 13 (increasing information required to be reported and requiring registrants to maintain and carry photo identification); 2010 Tenn. Pub. Acts, ch. 1145, § 1 (forbidding more than two registrants from living in the same residence); 2011 Tenn. Pub. Acts, ch. 266, § 1 (imposing reporting restrictions related to international travel); 2011 Tenn. Pub. Acts, ch. 287, § 1 (permitting public library directors to ban registrants from library premises); 2014 Tenn. Pub. Acts, ch. 992, § 1 [*14] (prohibiting registrants, regardless of age of victim, from living or working within

> 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public); 2014 Tenn. Pub. Acts, ch. 751, § 1 (authorizing local governments to establish community notification systems designed to notify residents, schools, and child care facilities when a registrant lives within a certain distance); 2014 Tenn. Pub. Acts, ch. 770, §§ 1, 2 (imposing lifetime registration requirement on all offenders whose victims were twelve or younger); 2015 Tenn. Pub. Acts, ch. 516, § 1 (increasing information required to be reported and prohibiting registrants being alone with a minor in a "private area").

2021 U.S. Dist. LEXIS 23480, at *5-14 (M.D. Tenn. Feb. 8, 2021).

### *IMPACT ON THE PLAINTIFF*

11. Plaintiff has been retroactively required to comply with the Act. Plaintiff was convicted three years before the Act came into effect and nineteen years before the Act was most recently amended. Since pleading guilty to rape in 2001 as a juvenile, the Plaintiff has been subjected, *inter alia*, to the following obligations, restraints, disabilities, and punishments that were not in force in 2001 when he pleaded guilty:

- Since 2002, he has been required to report within ten days of being employed or becoming a student or volunteer at an institution of higher learning in the county or municipality in which he resides.

- Since 2003, he has been prohibited from establishing a residence or accepting employment within 1,000 feet of a school, a child care facility, or the home of their victim or the victim's immediate family member; coming within 100 feet of the victim; establishing a residence or other living accommodation with a minor who was not the registered offender's own

child; or establishing a residence with the registered offender's own minor child, if any child of the offender had been the offender's victim or if the offender's parental rights had been or were being terminated.

- Since 2004, he has been required to verify his registration in person to a designated law enforcement agency on, at least, a quarterly basis. As a "violent sexual offender," Plaintiff must report in person every March, June, September, and December (see Tenn. Code Ann. § 40-39-204(b)(1) (2016)), and he must verify and update the following information:

    (a)   Plaintiff's complete name and all aliases;

    (b)   Plaintiff's date and place of birth;

    (c)   Plaintiff's social security number;

    (d)   A photocopy of Plaintiff's driver license;

    (e)   Sexual offenses or violent sexual offenses for which Plaintiff has been convicted, the date of the offenses, and the county and state of each conviction;

    (f)   Name of any of Plaintiff's current employers and length of employment, including physical addresses and phone numbers;

    (g)   Plaintiff's current physical address and length of residence at that address, including any primary or secondary residences;

    (h)   Plaintiff's mailing address, if different from Plaintiff's physical address;

    (i)   Any vehicle, mobile home, trailer, or manufactured home used or owned by Plaintiff, including descriptions, vehicle information numbers, and license tag numbers;

(j) Any vessel, live-aboard vessel, or houseboat used by Plaintiff, including the name of the vessel, description, and all identifying numbers;

(k) Name and address of each institution of higher education in this state where Plaintiff is employed or practices a vocation or is a student;

(l) Plaintiff's race and gender;

(m) Name, address, and phone number of Plaintiff's closest living relative;

(n) Whether victims in the underlying offenses were minors or adults, the number of victims, and the correct age of the victim or victims and of Plaintiff at the time of the offense or offenses, if the ages are known;

(o) Verification by the TBI or Plaintiff that the TBI has received Plaintiff's DNA sample;

(p) A complete listing of Plaintiff's electronic mail address information, including usernames, any social media accounts Plaintiff uses or intends to use, instant message accounts, other Internet communication platforms or devices, and Plaintiff's username, screen name, or other method by which Plaintiff accesses these accounts or web sites;

(q) Whether any minors reside in Plaintiff's primary or secondary residences;

(r) Any other registration, verification, and tracking information, including fingerprints and a current photograph of Plaintiff, his vehicles, and his vessels, required by TBI rules;

(s) Copy of Plaintiff's passport; and

(t) Professional licensing information that authorizes Plaintiff to engage in an occupation or carry out a trade or business.

Whenever he changes any of this information, Plaintiff must report within forty-eight hours. There are no "good cause" exceptions to the reporting or notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Plaintiff must report in person within forty-eight hour or face felony charges.

- Since 2005, he has been forbidden from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public.

- Since 2007, Plaintiff's information has been made public.

- Since 2008, his employment has been restricted, and he has been prohibited from wearing certain clothes around minors.

- Since 2009, he has been forbidden from the premises of school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if he has reason to believe children are present, or from standing or sitting idly within 1,000 feet of such locations unless he is responsible for a child or a "specific or legitimate reason" for his presence.

- Since 2014 he has been prohibited from living or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public.

12. The requirement that a plea of guilt be made knowingly, competently, and voluntarily are present with both juvenile and adult defendants. Plaintiff was a juvenile defendant. Because of the severe burdens associated with sex offender registration, the issue of whether a conviction will result in registration is critical for criminal defendants. The choice whether to plead guilty often turns on whether a defendant must register, for how long a defendant must register, and whether registration is public or private. Plaintiff elected to waive his constitutional right to trial and pled guilty based on his understanding of the consequences of his plea, which did not include any of the specific items listed in the preceding paragraph. Thus, nearly two decades later, the Act has fundamentally, and retroactively, altered the consequences of his plea.

13. Per the Act, it is a felony for Plaintiff to knowingly reside or work within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public (an "Exclusion Zone"). See Tenn. Code Ann. § 40-39-211(a)(1). He is also prohibited from standing, sitting "idly," or remaining within an Exclusion Zone if he "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Id. § 40-39-211(d)(1).

14. Although the Act requires Plaintiff's "knowledge" to establish a violation, Tenn. Code Ann. § 40-39-211(a)(1) & (d)(1) (2016), his mere presence in an Exclusion Zone is sufficient to establish probable cause. Thus, Plaintiff is subject to arrest any time he is in an Exclusion Zone – even though Exclusion Zones did not exist when he was convicted.

15. The Exclusion Zones can change on a moment's notice. For example, Plaintiff is prohibited from being within 1,000 feet of any "public athletic field available for use by the general public in this state when children" are present. Tenn. Code Ann. § 40-39-211(d)(1)(B) (2016). If Plaintiff sits in his car 1,000 feet from a soccer field when that field is empty, he is not in violation of the law; however, the moment Plaintiff sees a child on the soccer field, Plaintiff is in violation of the law. Even if Plaintiff does not see the child, Plaintiff is subject to arrest at the whim of any investigating police officer, because Plaintiff's mere presence would give the officer probable cause to make an arrest. It is impossible for Plaintiff to comply with the prohibition on standing, sitting, or remaining within an Exclusion Zone because that requires moment-to-moment knowledge of whether he is in an Exclusion Zone.

16. The Exclusion Zones cover vast areas, especially in urban and suburban regions. Because Exclusion Zones are measured as the crow flies, rather than as people actual travel between two points, some Exclusion Zones cover areas that are much further than 1,000 feet from a school, in terms of the travel distance. Exclusion Zones put a significant percentage of cities and towns off-limits. As a result, Exclusion Zones severely restrict access to employment and housing and limit Plaintiff's ability to engage in normal human activity.

17. Plaintiff knows that he did wrong as a juvenile when he committed the crimes in question. However, he is no longer the teenage boy that is on the registry for the very poor decisions he made. Nevertheless, he is now unjustly seen and treated as if the crime had happened yesterday. Over the years he has lost jobs due to the ubiquitous and ever-

expanding Exclusion Zones. For example, Plaintiff once had a head manager position where he ran an entire restaurant. A nearby forest was about to be considered a state park, so Plaintiff had to leave his job since the restaurant was within 1,000 feet of this forest. Even though the forest was inaccessible to the public, Plaintiff would have faced arrest for being within 1,000 feet of an Exclusion Zone if he had not quit.

18. Prior to 2004, going to college was not a problem for Plaintiff. However, once the Act was implemented, it became difficult for him to attend school in person at Middle Tennessee State University. He wanted to take pilot courses, but he was refused. Thus, he had to do much of his college training at home via correspondence.

19. In 2016, the Plaintiff opened a secondhand collectables shop in Bedford County, Tennessee. Plaintiff employed a third party to measure the distance between the sign of his business to the nearest Exclusion Zone. Based upon their calculations, it was more than 1,000 feet. Plaintiff, in turn, felt confident in setting up his business at this location. However, law enforcement used a different means of calculating the distance from his business to the Exclusion Zone. Based upon the State's calculation, Plaintiff's business is within 1,000 feet. The State also claims that Plaintiff has used an unregistered Facebook page. Thus, in August 2019, Plaintiff was charged with violating the Act; he still awaits his preliminary hearing.

20. This toll extends to Doe's personal life. He is married and has a child. He and his wife are getting a divorce due, in part, to the strain that his being on the registry has placed on their marriage. The constant fear of the police coming to their house unannounced to make an arrest or to search the house was too much for his wife to bear.

21. Prior to the initiation of his divorce, he once rented an entire business' facility so that his daughter could have a birthday party. He did this expressly to keep unrelated children from the facility. The only people allowed to come were relatives. Nevertheless, because the relatives included children, he was arrested for being at his daughter's birthday party since that was a place provided for children. Thus, his daughter could not have a birthday party with her father and other children present.

22. Even though his wife is amenable to him having joint custody during the divorce proceeding, the chancellor has ruled that he cannot be with his child during the divorce while he is still on the registry.

23. Thus, for the reasons listed above, Plaintiff continues to suffer harm due to the unconstitutional application of the Act as to him.

## **CLAIMS FOR RELIEF**

### *COUNT I: VIOLATION OF THE EX POST FACTO CLAUSE*

24. The retroactive application of the Act and/or any amendments to SORMA made after Plaintiff's 2001 conviction violates the *Ex Post Facto* Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to its enactment. See Doe v. Lee, supra.

### *COUNT II: VIOLATION THE DUE PROCESS CLAUSE*
### *(BREACH OF PLEA AGREEMENT)*

25. The Due Process Clause prohibits states from breaching a plea bargain.

26. Doe entered and complied with a valid plea bargain with the State in 2001.

27. The Act constitutes a retroactive increase in the punishment inflicted upon Doe and, thus, a breach of his plea bargain in violation of the Due Process Clause.

*COUNT III: VIOLATION OF EIGHTH AMENDMENT –
CRUEL AND UNUSUAL PUNISHMENT*

28. Plaintiff asserts that the mandatory lifetime registration requirement is unconstitutional as applied to him since he was a juvenile when he committed his crimes.

29. The Supreme Court has held that a mandatory lifetime sentence may not be imposed on an individual who committed a homicide when he was a juvenile. See Jones v. Mississippi, 141 S. Ct. 1307, 1311 (2021).[2] Although this matter is not a homicide, Plaintiff believes the same logic should apply since a lifetime sexual offender registration is tantamount to a lifetime sentence. Thus, Plaintiff seeks a declaration that the Act and/or SORMA's mandatory lifetime registration requirements are unconstitutional as applied to him since no lesser sentence was available when he was convicted in 2001.

30. Since 2011, the State has enacted a juvenile sex offender registry. Under current law, violent juvenile sexual offenders may have their names removed from the registry once they turn twenty-five years of age, provided they have no subsequent offenses. See Tenn. Code Ann. § 40-39-207 (j) (3). Had he been convicted of the same crime as a juvenile today, he could have been removed from the registry in seven years. However, because he was convicted in 2001, he was placed on the adult registry for life.

---

[2] "Under Miller v. Alabama, 567 U. S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentence therefore has discretion to impose a lesser punishment."

31. The creation of this bifurcated sex offender registration system in 2011 accords with the holding in Jones in that the Tennessee Code implicitly recognizes that mandatory lifetime punishments for juveniles are unjust and unconstitutional. Plaintiff merely seeks the same accommodation.

**LACK OF LEGAL REMEDY**

32. Doe's harm is ongoing and cannot be alleviated except by injunctive relief. In fact, if injunctive relief is not granted, he may have his liberty and property taken from him by the State of Tennessee without due process of law.

33. No other remedy is available at law.

**REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Doe requests that this Court:

a. Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that retroactive application of the Act and amendments to SORMA made subsequent to Plaintiff's 2001 conviction violates the prohibition in the United States Constitution against *ex post facto* laws as applied to Doe and issue a permanent injunction restraining the defendants from retroactively enforcing the Act against Doe;

b. Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that applying the Act and amendments to SORMA made subsequent to Doe's 2001 conviction to Doe breaches Doe's plea agreement and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and issue a permanent injunction restraining the defendants from enforcing the Act against Doe;

c. Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that the Act and its predecessor, as applied to Doe, violates the Eighth Amendment by requiring him to register as a sexual offender for life given that he had committed the underlying crime while he was a juvenile, and issue a permanent injunction restraining the defendants from enforcing the Act against Doe;

d. Award Doe his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

e. Grant such other relief as the Court finds just and proper.

Respectfully submitted on this the 23nd day of October, 2021,

*The Law Offices of David J. McKenzie*

By: /s/ David J. McKenzie
David J. McKenzie (TN 025563)
205 West Commerce Street
Lewisburg, TN 37091
T: (931) 359-7305


*The Law Office of Matthew Wilson*

By: /s/ Matthew D. Wilson
Matthew Wilson (TN 028175)
PO Box 4814
Mississippi State, MS 39762
T: (662) 312-5039