IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:21-cv-00809 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| WILLIAM B. LEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss. (Doc. No. 13, "Motion"). Via the Motion, Defendants ask the Court to dismiss Plaintiff's Complaint pursuant to the *Younger* abstention doctrine. Plaintiff responded in opposition (Doc. No. 19, "Response"), and Defendants replied (Doc. No. 20, "Reply"). For the reasons discussed below, the Court declines to exercise jurisdiction in this case, based on the abstention doctrine in *Younger v. Harris*, 401 U.S. 37 (1971).

## FACTUAL ALLEGATIONS[1]

In 1994, the Tennessee General Assembly passed the Sex Offender Registry and Monitoring Act ("SORMA"), which required the Tennessee Bureau of Investigation to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." 1994 Tenn. Pub. Laws, ch. 976 § 7(a). The SORMA required registration for all individuals convicted of any one of a number of identified sexual offenses, "unless the offender

---

[1] The alleged facts set forth herein are taken from the Complaint. (Doc. No. 1). As will be discussed, because the Court construes Defendants' Motion as a factual attack on subject-matter jurisdiction, the Court need not and does not accept as true the factual allegations set forth in the Complaint. Having said that, the Court notes that (i) it summarizes, in this section, Plaintiff's factual allegations merely to put the instant Motion into context; and (ii) much of the Complaint's factual allegations serve merely to summarize the development of Tennessee law regarding sex offender registration, and such allegations likely could be refuted or confirmed with relative ease at such time as it were necessary to assess their accuracy.

had been wholly released without supervision from incarceration, probation, or parole prior to January 1, 1995." *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, C.J.) (citing 1994 Tenn. Pub. Laws, ch. 976 § 3(2)–(3)). However, "[i]n the ensuing decades, [] the Tennessee General Assembly repeatedly returned to the sexual offender registration statutes to change whom they reached, what they required, and how much protection they offered to registered offenders' privacy." *Reid v. Lee*, No. 3:20-CV-00050, 2020 WL 4501457, at *3 (M.D. Tenn. Aug. 5, 2020).

In 2004, the Tennessee General Assembly repealed SORMA and replaced it with the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act of 2004 ("the Act"), which continues, in amended form, today. 2004 Tenn. Pub. Laws, ch. 921. As the undersigned has recounted before:

> The Act continued the State's registration system, albeit with some changes. Carrying on a distinction first introduced to SORMA in 2000, the Act classifies registrants as either "sexual offenders" or "violent sexual offenders," depending on the offense of which that registrant was convicted. Individuals classified as sexual offenders include those convicted of sexual battery, statutory rape, aggravated prostitution, sexual exploitation of a minor, incest, indecent exposure (upon the third such conviction), and false imprisonment of a minor who was not the offender's own child—an offense that, in and of itself, contains no expressly sexual element, see Tenn. Code Ann. § 39-13-302 ("A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty."). *Id*. § 1(16). Also included as sexual offenders are any offenders convicted of attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact with regard to any of the qualifying offenses. *Id*. Individuals classified as violent sexual offenders include those convicted of rape, aggravated rape, rape of a child, aggravated sexual battery, aggravated or especially aggravated sexual exploitation of a minor, aggravated or especially aggravated kidnapping of a minor other than the offender's own child, sexual battery by an authority figure, solicitation of a minor, and attempt, solicitation, or conspiracy with regard to any of the aforementioned qualifying offenses. *Id*. § 1(24).
>
> Under the Act, sexual offenders must verify their registration information on an annual basis, and violent sexual offenders must do so quarterly. Tenn. Code Ann. § 40-39-204(b)–(c). In contrast to SORMA's system of TBI-propagated

forms, the Act requires offenders to register and report in person to a designated law enforcement agency. Tenn. Code Ann. §§ 40-39-203(a), 40-39-204(b). Reports based on certain triggering events, such as a change of residence or employment, must be made within forty-eight hours. Tenn. Code Ann. § 40-39-203(a)(3)–(6). The Act increased the amount of information required to be reported, Tenn. Code Ann. § 40-39-203(h), and offenders are required to pay administrative fees related to their ongoing inclusion in the registry, Tenn. Code Ann. § 40-39-204(b)(1) and (c). Some offenders remain eligible for removal from the registry after ten years, but the authority to make an initial removal decision has been vested in the TBI, with a right to appeal to a chancery court. Tenn. Code Ann. § 40-39-207(b), (g). A violation of the Act's requirements is now a felony, as opposed to a misdemeanor under SORMA. Tenn. Code Ann. § 40-39-208(b).

Like SORMA, the Act has been repeatedly revised to increase its restrictions and requirements and to make more information about registered offenders publicly available. See 2005 Tenn. Pub. Acts, ch. 316, § 1 (adding to events and information that must be reported and increasing administrative fees); 2006 Tenn. Pub. Acts, ch. 890, § 20 (forbidding registrants whose victims were minors from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public); 2007 Tenn. Pub. Acts, ch. 126, § 1 (adding to events triggering a 48-hour reporting obligation); 2007 Tenn. Pub. Acts, ch. 531, § 1 (making public all registrants' information, regardless of date of offense); 2008 Tenn. Pub. Acts, ch. 979, § 1 (adding information required to be reported and making information, including registrant e-mail addresses, available to qualifying businesses); 2008 Tenn. Pub. Acts, ch. 1164, § 13 (restricting employment permitted to registrants whose victims were minors and forbidding said registrants from wearing certain costumes—such as clowns or fictional characters—in the presence of minors); 2009 Tenn. Pub. Acts, ch. 597, § 1 (forbidding all registrants, regardless of age of victim, from the premises of school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if they have reason to believe children are present, or from standing or sitting idly within 1,000 feet of such locations unless the registrant is responsible for a child or a "specific or legitimate reason" for their presence); 2010 Tenn. Pub. Acts, ch. 1138, §§ 7, 13 (increasing information required to be reported and requiring registrants to maintain and carry photo identification); 2010 Tenn. Pub. Acts, ch. 1145, § 1 (forbidding more than two registrants from living in the same residence); 2011 Tenn. Pub. Acts, ch. 266, § 1 (imposing reporting restrictions related to international travel); 2011 Tenn. Pub. Acts, ch. 287, § 1 (permitting public library directors to ban registrants from library premises); 2014 Tenn. Pub. Acts, ch. 992, § 1 (prohibiting registrants, regardless of age of victim, from living or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public); 2014 Tenn. Pub. Acts, ch. 751, § 1 (authorizing local governments to establish community notification systems designed to notify residents, schools, and child care facilities when a registrant lives within a certain

distance); 2014 Tenn. Pub. Acts, ch. 770, §§ 1, 2 (imposing lifetime registration requirement on all offenders whose victims were twelve or younger); 2015 Tenn. Pub. Acts, ch. 516, § 1 (increasing information required to be reported and prohibiting registrants being alone with a minor in a "private area").

*Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1169-70 (M.D. Tenn. 2021) (Richardson, J.) (quoting *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *3 (M.D. Tenn. Nov. 9, 2017)).

In 2000, Plaintiff pleaded guilty to a sex crime, and he was required to register as a sex offender pursuant to SORMA. (Doc. No. 1 at ¶ 3). Since that time (as discussed above), SORMA and the Act have been amended to place more onerous requirements on Plaintiff. (*Id*. at ¶ 11). One such requirement is that Plaintiff may not knowingly reside or work within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public (an "Exclusion Zone"). (*Id*. at ¶ 13 (citing Tenn. Code Ann. § 40-39-211(a)(1))). He is also prohibited from standing, sitting "idly," or remaining within an Exclusion Zone if he "has reason to believe" that minors are present and he does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." (*Id*. (citing Tenn. Code Ann. § 40-39-211(d)(1))).

In 2016, Plaintiff opened a secondhand collectibles shop in Bedford County, Tennessee. (*Id*. at ¶ 19). Plaintiff employed a third party to measure the distance between the sign of his business to the nearest Exclusion Zone. (*Id*.). Based upon the third party's calculations, his business was more than 1,000 feet from the nearest Exclusion Zone. (*Id*.). Plaintiff, in turn, felt confident in setting up his business at this location. (*Id*.). However, law enforcement used a different means of calculating the distance from his business to the Exclusion Zone, and according to their calculation, Plaintiff's business was within 1,000 feet of a school. (*Id*.). Law enforcement also claims that Plaintiff has used an unregistered Facebook page. (*Id*.). Thus, in August 2019,

Plaintiff was charged with violating the Act. (*Id.*). As of the time of the filing of the Complaint, Plaintiff was still awaiting his preliminary hearing. (*Id.*).

## PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit, alleging therein that the Act violates the following provisions of the United States Constitution: the Ex Post Facto Clause (Count I), the Due Process Clause (Count II), and the Eighth Amendment (Count III). (*Id.* at 17-18). Defendants filed the instant Motion, invoking both Rule 12(b)(1) and Rule 12(b)(6), arguing that the Court should dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to the *Younger* abstention doctrine, based on Plaintiff's pending criminal charges in State court. (Doc. No. 13).

## LEGAL STANDARD

There is some disagreement among Courts as to whether an argument for dismissal based on the application of *Younger* abstention is brought more appropriately under Rule 12(b)(1) or under Rule 12(b)(6). *Cooper v. Rapp*, No. 2:16-CV-00163, 2016 WL 7337521, at *5 n.6 (S.D. Ohio Dec. 19, 2016), *aff'd*, 702 F. App'x 328 (6th Cir. 2017). As far as the undersigned has been able to determine, neither the Supreme Court nor the Sixth Circuit has spoken definitely on this issue. The Court need not belabor the point, but it will note that there are arguments to be made in support of either approach. Ultimately, the Court concludes that a motion to dismiss grounded on *Younger* abstention is more appropriately grounded in Rule 12(b)(1) than Rule 12(b)(6). This is because such a dismissal plainly is one that is not on the merits,[2] and a dismissal under Rule 12(b)(6) generally is a dismissal on the merits while a dismissal under Rule 12(b)(1) is not. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("Normally, Rule 12(b)(6)

---

[2] This is clear from, among other things, the fact that (as discussed below) the usual procedure where *Younger* abstention is applicable is to stay the (federal) case; obviously, if the applicability of *Younger* generally warrants only a mere stay, it hardly can be said to indicate an adjudication on the merits.

judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not.") Put differently, a court that dismisses a case based on *Younger* abstention has not dismissed under Rule 12(b)(6), because it has not dismissed on the merits. *Wilkins v. Jakeway*, 183 F.3d 528, 533 (6th Cir. 1999) ("Despite what the court said about deciding the matter as a decision on the merits under 12(b)(6), what the court did was to effectively decline to reach the merits of Plaintiff's claims as to the individual Defendants."). Thus, "this Court will consider Defendants' argument for dismissal based on *Younger* abstention as an argument for dismissal under Rule 12(b)(1)." *Cooper*, 2016 WL 7337521, at *5 n.6.

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack challenges merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish cognizable federal subject-matter jurisdiction, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject

matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990). The Sixth Circuit has noted that:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[3] *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017) (discussing *Gentek*). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015); *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005).

Regrettably, Defendants do not indicate whether they are bringing a facial attack, or instead a factual attack, on subject-matter jurisdiction. Plaintiff likewise regrettably skips over the question of whether the attack on subject-matter jurisdiction is a facial one or a factual matter. Plaintiff

---

[3] Plaintiff requests an evidentiary hearing. However, an evidentiary hearing is unnecessary because as discussed below, even viewing all of Plaintiff's submitted evidence is in his favor, the Court still finds that *Younger* abstention is warranted. The Court therefore exercises its discretion to rule on the present Motion without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

suggests that the Court construe the Motion as one brought pursuant to Rule 12(b)(1) rather than Rule 12(b)(6). (Doc. No. 19 at 1). This suggestion is sound, and the Court embraces it, as discussed above. But then Plaintiff goes off track by implying that if the Court treats the Motion as one under Rule 12(b)(1), then the Court necessarily may consider Plaintiff's evidence that is discussed in and attached to his Response. (*Id.*) This implication is incorrect. The fact that a motion is one under Rule 12(b)(1) is not dispositive of whether the Court may consider Plaintiff's evidence; what is dispositive of whether evidence (as opposed to the complaint's mere allegations) can be considered on a Rule 12(b)(1) motion is whether the motion presents a facial attack on subject-matter jurisdiction or, instead, a factual attack on subject-matter jurisdiction. As discussed above, consideration of such evidence is appropriate when analyzing a 12(b)(1) motion that is a *factual* attack, but not when analyzing a *facial* attack.

Ultimately, consistent with Plaintiff's wish, the Court indeed finds that it may (and will) consider Plaintiff's proffered evidence because it is appropriate to construe the Motion as a factual attack (rather than facial attack) brought pursuant to Rule 12(b)(1). The Court sees no problem with so doing because: (1) it prejudices neither Plaintiff (who, after all, requested such treatment and would have lost on the Motion anyway had the Court instead treated the Motion as a facial attack[4]) nor Defendants (who ultimately prevail on a factual attack just as they would have prevailed were the Motion construed as a facial attack) which goes against Plaintiff because, and (2) apparently, Defendants have no qualms with the Court doing so, because in their Reply they acknowledge Plaintiff's evidence, apparently assuming the Court will consider such evidence on

---

[4] As discussed below, Plaintiff "concedes that the primary elements to the *Younger* abstention are met" (Doc. No. 19 at 2) and thereafter he implies (correctly), when asking the Court to consider evidence outside of the Compliant, that the three requirements necessary for the Court to invoke the *Younger* abstention doctrine are satisfied on the face of the Complaint. And there is nothing on the face of the Complaint sufficient to show an exception to *Younger* abstention. Accordingly, based on such concession and the allegations in the Complaint, the *Younger* abstention doctrine would be applied if the Court were to construe the Motion as a facial challenge under Rule 12(b)(1).

its Motion, without raising any argument that the Court is instead relegated to considering only the face of the Complaint. Thus, the Court will construe the Motion as a factual attack on the subject-matter jurisdiction of the Court under Fed. R. Civ. P. 12(b)(1) and consider Plaintiff's evidence.

## ANALYSIS

### I. *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court "held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989). The underlying concern of *Younger* is the "threat to our federal system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423 (1979). Expressing this concern slightly differently, the Sixth Circuit has stated that "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity. *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017).Accordingly, when it does apply, "*Younger* abstention requires the federal court to defer to the state proceeding." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).

*Younger* abstention is applicable where three requirements are met: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges."[5] *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (quoting *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)).

---

[5] Although the Court has not found case law specifically so stating, it seems that the requisite "ongoing state judicial proceedings" must be proceedings that are somehow at least *potentially implicated by the federal lawsuit*. Only "ongoing state proceedings" fitting this description would raise the concerns that *Younger* is intended to address.

Here, Plaintiff "concedes that the primary elements to the *Younger* abstention doctrine are met[.]" (Doc. No. 19 at 2).[6] The concession is well taken, as the Court finds that the elements of *Younger* abstention are met even irrespective of such concession.

First, Plaintiff avers in his declaration (Doc. No. 19-1, "Declaration") that in 2019, Bedford County and Marshall County officials both charged him for the same offense (*i.e.*, operating a business within 1,000 yards of a school) and those charges are still pending against him (*id.* at 4-6). This is clearly an ongoing judicial proceeding in state court implicated by this lawsuit; indeed, in this lawsuit Plaintiff seeks relief specifically from that ongoing state proceeding. Second, the ongoing judicial proceedings in this case involve an important state interest. The Act explicitly states that its creation was based on "a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses." Tenn. Code Ann. § 40-39-201(b). Further, it is axiomatic that state criminal proceedings involve important state interests. *See Juidice v. Vail*, 430 U.S. 327, 345 (1977) ("Pending state criminal proceedings have always been viewed as paradigm cases involving paramount state interests." (Brennan, J. dissenting)); *see also Sims v. McCarter*, No. 3:18-cv-00072, 2018 WL 1138537, at *2 (M.D. Tenn. Mar. 2, 2018) ("*Younger* established a near-absolute restraint rule when there are pending state criminal proceedings." (quoting *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980)). And finally, during the course of Plaintiff's criminal proceedings, he will have an adequate opportunity to raise his constitutional claims. Tennessee courts provide a criminal defendant with "an adequate opportunity to raise constitutional challenges." *Sims*, 2018 WL 1138537, at *3; *see also Gonnella*,

---

[6] In the Response, Plaintiff specifically stated, "The Defendant concedes that the primary elements to the *Younger* abstention are met[.]" (Doc. No. 19 at 2). Plaintiff then asserts that he intends to rely on an exception to the *Younger* doctrine. Considering Plaintiff's stated strategy, and the obvious reality that it is only Plaintiff (and not Defendants) that would be "conced[ing]" something by acknowledging that the elements of *Younger* are satisfied, the Court finds that Plaintiff's statement that "Defendant concedes" was a typographical error, as it is clear from the Response that Plaintiff is conceding such point.

115 F. App'x at 772 (holding that Tennessee criminal court proceedings provided an adequate opportunity to raise constitutional challenges); *Cooper v. Parrish*, 203 F.3d 937, 955 (6th Cir. 2000). Accordingly, all of the elements of *Younger* abstention are met here. Therefore, to have his case heard, Plaintiff must show that his case fits into an exception to the *Younger* abstention doctrine.

### II. Exceptions to *Younger* Abstention

Exceptions to the *Younger* abstention doctrine have been recognized in the following circumstances: (1) where "the state proceeding is motivated by a desire to harass or is conducted in bad faith," ["bad faith/harassment exception"] *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) where "[a] challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore*, 442 U.S. at 424 (quoting *Huffman*, 420 U.S. at 611); and (3) where there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). The exceptions to *Younger* have generally been interpreted narrowly by the Supreme Court and the Sixth Circuit. *See Gorenc v. City of Westland*, 72 F. App'x 336, 338–39 (6th Cir.2003) (citing *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986)). The plaintiff bears the burden of demonstrating the existence of any exception to *Younger* abstention on which the plaintiff relies. *See Squire v. Coughlan*, 469 F.3d 551, 552 (6th Cir. 2006) (citation omitted).

Here, Plaintiff relies on the first exception. That is, Plaintiff argues that his case falls within the bad faith/harassment exception to *Younger* abstention. In support of this argument, Plaintiff relies on his Declaration that is attached to his Response. (Doc. No. 19-1). In the Declaration, he avers that in 2019, Bedford County and Marshall County officials both charged him (separately) for the same offense (*i.e.*, operating a business within 1,000 yards of a school) based on the exact

same conduct. (*Id*. at 4-6). He argues that these charges are evidence of bad faith/harassment because:

> Given that Marshall County and Bedford County are part of the 17th Judicial District, one must assume that both prosecutions are being conducted jointly—in that they are both being conducted by prosecutors from the same firm (to borrow a term from private practice). Such would not be the case if, for illustration purposes, a different prosecutor's office in Memphis or Knoxville was prosecuting Doe, oblivious to what was transpiring in Shelbyville. On the contrary, this is the same office that is prosecuting Doe in two different counties for the same alleged violation of the Act. Thus, prosecutors knew that Doe would incur added expense and stress by having to defend the same charge simultaneously in two different venues.

(Doc. No. 19 at 3). In other words, Plaintiff here asserts that if a single prosecutor's office charges him in multiple cases for the same offense, that at least contributes towards a finding of bad faith and harassment.

But Plaintiff alleges additional circumstances that, according to him, make an additional contribution to a finding of bad faith/harassment. Specifically, within the Declaration, Plaintiff avers that he has been arrested twice in the past for failing to comply with the requirements of Act (first in 2009 for failing to update his driver's license to reflect his sex offender status, and again a few years later for not allowing police to search his home). (*Id*.). He also avers that his house has been searched three times over the course of nearly 18 years (he specified one search was in 2004 but did not specify the year that the other searches occurred, only that they were subsequent to the 2004 search). (*Id*.).

In summary, Plaintiff argues that "[t]he duplicate prosecutions in Marshall County and Bedford County, when viewed in conjunction with the history of police harassment that [Plaintiff] has endured [ ] give rise to bad faith and harassment." (Doc. No. 19 at 4). Plaintiff notes that "the Court in *Younger* discussed *Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965), as an example of the bad faith/harassment exception, because that case involved repeated

threats by prosecutors designed to discourage individuals from asserting their constitutional rights." (*Id*.). He argues that similarly, his "history with law enforcement and prosecutors" demonstrates that the current prosecutions "are being done in bad faith and/or to harass" Plaintiff. (*Id*. at 6). Thus, he maintains that "Defendants should not be permitted to enjoy the benefit of *Younger* abstention due to prosecutions that are improper and inequitable." (*Id*.).

In Reply, Defendants assert that Plaintiff's evidence "falls outside of the narrow scope of the bad faith and harassment exception to *Younger* abstention." (Doc. No. 20 at 2). Defendants point out that courts apply this exception only where there is evidence of prosecution brought "without any hope of ultimate success, but only to discourage appellant[s] [from exercising their] civil rights." (*Id*. (citing *Dombrowski*, 380 U.S. at 490)). Defendants contend that Plaintiff has not presented evidence that the prosecutions were brought against him without the hope of success. Defendants further contend that Plaintiff does not argue that the behavior for which he is charged was not a crime. Thus, Defendants maintain that the Court should not refrain from invoking *Younger* abstention due to the bad faith/harassment exception to the doctrine.

The bad faith/harassment exception to *Younger* abstention "is extremely narrow and applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions." *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994). The Sixth Circuit has explained that:

> the Supreme Court has applied the bad faith/harassment exception "to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Ken-N.K., Inc. v. Vernon Township*, 18 F. App'x 319, 324-25 n.2 (6th Cir. 2001) (citing Erwin Chemerinsky, Federal Jurisdiction § 13.4, at 806-08 (3d ed. 1999)); *see also, e.g., McNatt[]*, 37 F.3d 629 [ ] (holding that the bad faith/harassment exception to *Younger* "is extremely narrow and applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions").

*Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. Nov. 27, 2018). Likewise, "no Sixth Circuit case . . . has ever authorized federal intervention under the bad faith or harassment exception." *Watkins v. Ohio Dep't of Educ.*, No. 2:21-CV-04482, 2022 WL 672565, at *7 (S.D. Ohio Mar. 7, 2022) (citation and internal quotation marks omitted). "Courts limit findings of bad faith to extreme facts, such as when Texas city police officers 'repeatedly engaged in searches and seizures they knew to be unlawful,' or when a county prosecutor office 'filed twelve separate actions . . . in order to harass the plaintiffs and drain them of all their financial resources.'" *O'Brien v. Herold*, No. 2:20-CV-02406, 2021 WL 364255, at *6 (S.D. Ohio Feb. 3, 2021) (quoting *Kalniz v. Ohio St. Dental Bd.*, 699 F. Supp. 2d 966, 973 (S.D. Ohio 2010)). Thus, "the standard for evaluating claims of bad faith [ ] is difficult to meet." *Id.* (citing *Berger v. Cuyahoga Cty. Bar Ass'n*, 775 F. Supp. 1096, 1100 (N.D. Ohio 1991)).

The Court finds that Plaintiff has not shown the existence of bad faith or harassment in order for this case to fall into the bad faith/harassment exception to *Younger* abstention. Although Plaintiff asserts that his case is similar to *Dombrowski* (the case cited by the court in *Younger* as an example of the bad faith/harassment exception), *Dombrowski* is clearly distinguishable. 380 U.S. at 479. In *Dombrowski*, the Supreme Court granted a preliminary injunction preventing the state from prosecuting the plaintiffs under a subversive activities law. *Id.* at 482. The plaintiffs showed that the state had repeatedly arrested them for harassment purposes, without "any expectation of securing valid convictions," and that each time the charges were later dismissed. *Id.* at 482, 488–89. Addressing the *Dombrowski* decision six years later, the *Younger* Court emphasized that enjoining state criminal prosecutions is appropriate only in "extraordinary circumstances," 401 U.S. at 53, and distinguished *Younger* from *Dombrowski* based on the "series of repeated prosecutions" in *Dombrowski*, *id.* at 49. On the same day as *Younger*, the Supreme

Court reiterated this limited exception, stating that the bad faith/harassment exception applies "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). In fact, the Supreme Court has yet to determine that any case falls into the *Dombrowski* exception based on bad faith prosecution. *Tindall v. Wayne Cnty. Friend of Court*, 269 F.3d 533, 539 (6th Cir. 2001). Here, while there are multiple prosecutions pending, Plaintiff does not contend that the state does not intend to follow through on the prosecutions, and thus, Plaintiff will be able to assert his constitutional claims in state court (unlike the plaintiffs in *Dombrowski*, who faced repeated charges and dismissal such that they could not actually assert their constitutional claims in state court). *See Huth v. Hubble*, No. 5:14-CV-1215, 2015 WL 966307, at *7 (N.D. Ohio Mar. 4, 2015) (refusing to invoke the bad-faith exception to *Younger* abstention where the "[p]laintiff [did] not contend that the state does not intend to follow through on the prosecutions . . . ."). Nor do the multiple prosecutions reflect the kind of flagrant and troubling law enforcement tactics involved in *Dombrowski*, where the activists were arrested *repeatedly* for charges that were swiftly dismissed.

Moreover, although Plaintiff asks the Court to infer bad faith because his charges are pending in two counties and are being undertaken by prosecutors "from the same firm," the Court will infer no such bad faith. To accept Plaintiff's averment that the two prosecutions are being pursued only to cause more stress to Plaintiff, the Court would be merely speculating as to the existence of a nefarious motive for the prosecution—and the Court declines to engage in such speculation. Further, while Plaintiff's residence was searched at least three times in the past and

Plaintiff was arrested on two occasions, Plaintiff does not indicate that it was done close in time to filing of his current charges, or that it was done by the same agency that is now prosecuting him. Thus, these occurrences viewed in conjunction with his current charges do not aid Plaintiff in demonstrating that the facts of his case fall into the bad faith/harassment exception to the *Younger* doctrine. Plaintiff's allegations of bad faith are otherwise conclusory assertions that the prosecutions of him are "inequitable" (whatever that means), which the Court does not accept as true in any event. In sum, Plaintiff has failed to meet the high bar of showing bad faith or harassment sufficient to exclude this case from *Younger* abstention. The Court will not interfere with an ongoing state-court proceeding.

### III. Whether to Stay or Dismiss

"A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007). Defendants ask the Court to dismiss the action because Plaintiff does not seek money damages. (Doc. No. 14 at 1, 5). Plaintiff, concentrating exclusively on his contention that *Younger* abstention should be found inapplicable, expresses no view on whether this matter should be dismissed or instead stayed if *Younger* abstention is applicable. (*See* Doc. No. 19).

"[W]hen application of *Younger* abstention is proper and the plaintiff is seeking money damages and equitable relief[,] the appropriate procedure is to stay the proceedings rather than dismiss the case without prejudice. *Cummings v. Husted*, 795 F. Supp. 2d 677, 694 (S.D. Ohio 2011) (citing *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995)); *see also Carroll v. City of Mount Clemens*, 139 F.3d 1072 (6th Cir. 1998). "However, 'dismissal without prejudice is proper under *Younger* for equitable claims.'" *Id.* (quoting *Louisville Country Club v. Kentucky Comm'n*

*on Human Rights*, 221 F.3d 1335, 1335 (6th Cir. 2000)); *see Davis v. Whitmer*, No. 1:19-CV-10569, 2019 WL 1326671, at *4 (E.D. Mich. Mar. 25, 2019) (abstaining from considering the plaintiff's *ex post facto* challenge to Michigan's sex offender registry act and dismissing the case, rather than staying the action, where the plaintiff did not seek money damages); *Johnson v. Ohio Bureau of Workers' Comp*., No. 1:13CV1199, 2014 WL 296875, at *7 (N.D. Ohio Jan. 27, 2014) (abstaining pursuant to *Younger* and dismissing the case, rather than holding the action in abeyance, where the plaintiff did not seek money damages).

Here, Plaintiff does not seek money damages, but rather seeks only injunctive and declaratory relief. (*See* Doc. No. 1 at 19-20); *see also Cummings*, 795 F. Supp. 2d at 694 (explaining that a request for attorneys' fees in relation to a claim for injunctive relief is not an "independent claim" for damages that required the court to stay the case). Accordingly, the Court in its discretion will dismiss this case without prejudice.

## CONCLUSION

For the above-mentioned reasons, the Court declines to exercise jurisdiction in this case, based on the abstention doctrine derived from *Younger*. Accordingly, Defendants' Motion to Dismiss (Doc. No. 13) will be granted and the case will be dismissed without prejudice.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE